JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Community Connections, Inc. and Roger Little Eagle | City of Winner, South Dakota |

**(b)** County of Residence of First Listed Plaintiff   Tripp
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Tripp
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See attached sheet.

Attorneys *(If Known)*
See attached sheet.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane    [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | Liability    [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel &    Pharmaceutical Slander    Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'    Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability    [ ] 368 Asbestos Personal [ ] 340 Marine    Injury Product [ ] 345 Marine Product    Liability | | [ ] 835 Patent - Abbreviated New Drug Application [ ] 840 Trademark | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | Liability    **PERSONAL PROPERTY** [ ] 350 Motor Vehicle    [ ] 370 Other Fraud | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle    [ ] 371 Truth in Lending Product Liability | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal    [ ] 380 Other Personal | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | Injury    Property Damage | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury -    [ ] 385 Property Damage Medical Malpractice    Product Liability | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights    **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting    [ ] 463 Alien Detainee | [ ] 791 Employee Retirement Income Security Act | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment    [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [x] 443 Housing/    [ ] 530 General Accommodations | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities -    [ ] 535 Death Penalty Employment    **Other:** | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities -    [ ] 540 Mandamus & Other Other    [ ] 550 Civil Rights | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education    [ ] 555 Prison Condition | [ ] 462 Naturalization Application | | |
| | [ ] 560 Civil Detainee -    Conditions of Confinement | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FHA, 42 U.S.C. 3601 et seq; ADA, 42 U.S.C. 12131 et seq.; Civil Rights Act of 1871, 42 U.S.C. 1983; and the Rehabilitation Act, 29 U.S.C. 794

Brief description of cause:
Housing Discrimination

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ TBD

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
05/04/2026    *May 4, 2026*

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

For Plaintiff Community Connections, Inc:

JOHNSON POCHOP & BARTLING LAW OFFICE, LLP
 Stephanie E. Pochop  (SD Bar # 1379)
405 Main Street
Gregory, SD  57533
(605) 835-8391

For Plaintiff Roger Little Eagle:

DISABILITY RIGHTS SOUTH DAKOTA
Elana J. Hicks (SD Bar # 5474
1604 Mt. View Rd., St. 1
Rapid City, SD  575502
(605)  224-8294

For Defendant City of Winner, South Dakota:

CITY ATTORNEY
Mason Juracek
325 S. Monroe St., Ste. #118
Winner, SD 57580
(605) 842-2606, ext. 1227

Page 2 CCS - CCI v. City of Winner

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

COMMUNITY CONNECTIONS, INC.    )
AND ROGER LITTLE EAGLE,        )              3:26-cv-3015
                               )
            Plaintiffs,        )
                               )              COMPLAINT
    v.                         )
                               )
CITY OF WINNER, SOUTH DAKOTA,  )
                               )
            Defendant.         )

## INTRODUCTION

1.    In this fair housing action, Plaintiffs Community Connections, Inc. ("CCI"), a nonprofit serving persons with developmental disabilities, and Roger Little Eagle ("Little Eagle"), a person with developmental disabilities, sue Defendant City of Winner ("the City") for denying CCI permission to open a group home for Little Eagle and other persons with developmental disabilities in violation of the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), the Civil Rights Act of 1871 ("Civil Rights Act"), and the Rehabilitation Act.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1983 for redress of deprivations of rights under the

-1-

United States Constitution and its laws; 42 U.S.C. § 3613 for redress of discriminatory housing practices; and 42 U.S.C. § 12133 for redress of disability discrimination.

3.     This Court has personal jurisdiction over Defendant City of Winner, a municipal corporation located in Tripp County, South Dakota, within the Central Division of the United States District Court for the District of South Dakota.

4.     Venue is proper because Plaintiffs' claims arise from unlawful conduct occurring in Tripp County, South Dakota, where Defendant City of Winner is located.

## PARTIES

5.     Located in Winner, Plaintiff CCI has provided supports, services, and housing options to persons with developmental disabilities since 1975. It is one of the twenty Community Support Providers ("CSPs") certified by the State of South Dakota under SDCL § 27B-1-17 to provide services to South Dakotans with developmental disabilities under South Dakota's Medicaid Home and Community Based Services ("HCBS") waivers.

6.     Among its many services, CCI provides Winner's developmentally disabled residents with housing options, including supportive living, shared living,

and group home residences, depending on a person's needs and housing availability.

7.    Plaintiff Roger Little Eagle, age 72, is a person with developmental disabilities as defined by SDCL § 27B-1-18 and 42 U.S.C. § 15002(8). Little Eagle has lived in Winner for approximately fifty years, and he has received supports and services from CCI since 1976.

8.    The City of Winner is a municipal corporation organized under Title 9 of the South Dakota Codified Laws. It operates in accordance with an Aldermanic form of local government (Mayor and Council) pursuant to SDCL, chap. 9-8. It is empowered to conduct local affairs and enact local laws, including the adoption of Zoning Regulations under SDCL § 9-12-13, and it is subject to the State's Municipal Planning and Zoning statutes, found in SDCL, chap. 11-4.

## FACTUAL ALLEGATIONS IN SUPPORT OF CLAIMS

### A.    Roger Little Eagle's housing.

9.    In 2024, CCI determined that many of its clients — persons with developmental disabilities in Tripp County — need additional supportive housing in the form of a group home, to be staffed by CCI employees in order to meet their disability-related needs. CCI identified Little Eagle as one of CCI's clients who needs supportive housing in a group home.

-3-

10.    Little Eagle, like many CCI clients, lives in private rental housing in Winner.  Over the decades, CCI has provided Little Eagle with supportive living services, consisting of biweekly home visits to help Little Eagle maintain his apartment.  Staff ensure that his kitchen and bathroom are clean, organize his laundry, check his personal hygiene, manage his diabetes and diet, and assist in the timely payment of his bills, including his rental payments.  Despite his disabilities, Little Eagle has, with the help of CCI, continued to maintain regular employment and he enjoys participating in Winner's local events.

11.    As Little Eagle has aged, his apartment has become increasingly inadequate to meet his disability-related needs.  By 2024, Little Eagle asked CCI to help him move, which CCI endorsed, observing that Little Eagle's apartment had fallen into substantial disrepair, including fire hazards, faulty plumbing, an inoperable stove, and cracks in the walls in Little Eagle's apartment.  Even if these defects were fixed, CCI and Little Eagle determined that Little Eagle's disabilities, coupled with his advanced age, rendered his apartment unsuitable housing.  For example, due to his mobility impairments, Little Eagle could no longer traverse the bathtub and was forced to either bathe in the bathroom sink or shower at CCI's day facility.

-4-

12.    Little Eagle was not alone in his need to relocate to more suitable housing: CCI determined that Little Eagle and at least four other clients needed supportive housing in the form of a group home in a residential setting where the CCI clients could continue their involvement and connection with the Winner community.

**B.    CCI searches for and finds housing for Little Eagle and other developmentally disabled clients.**

13.    In 2025, with the approval of the CCI board, and encouragement from the Division of Developmental Disabilities ("DDD") under South Dakota's Department of Human Services ("DHS"), Keenan Knutelski, CCI's then-Executive Director, started searching for a new home in Winner for Little Eagle and four other CCI clients. In March 2025, Knutelski believed he had found the perfect dwelling, a single-family home located at 474 West 9th Street (the "9th Street House").

14.    The 9th Street House met the disability-related needs of Little Eagle and the other CCI clients. First, it is located in a residential neighborhood — a necessary requirement under the HCBS waiver for CCI to integrate its clients with developmental disabilities in the Winner community — as depicted in Figure 1:



Figure 1

15.    The 9th Street House is located on the edge of a residential neighborhood, near the end of 9th Street.  It sits on a large parcel, providing privacy to residents and neighbors.  It has ample parking, more than sufficient for the one or two cars of CCI employees who would have stayed at the home or for visitors of the residents, as depicted in Figure 2, a front-view photograph:



Figure 2

16.  It also has a large backyard, which would have acted as a buffer between the 9th Street House and its neighbors, as depicted in the photographs labeled Figures 3 and 4:



Figure 3



Figure 4

17. The house contains 2,240 square feet of living space, including five bedrooms and two bathrooms, plus a large kitchen and a living room for household activities, as depicted in the photographs labeled Figures 5 and 6:



Figure 5



Figure 6

18.    The asking price for the 9th Street House was $223,900, a significant investment of CCI's limited resources.  Before making that commitment on behalf of CCI, Knutelski performed CCI's due diligence.  He conferred with State DDD staff about the suitability of the 9th Street House as a group home.

19.    On March 31, 2025, Kevin Dunn, the then-Director of the DDD, endorsed CCI's purchase of the house.  Knutelski also recruited Travis Nelsen, a Senior Health Facility Surveyor with the South Dakota Department of Health, to conduct a physical inspection of the 9th Street House and determine if it was suitable and safe as a group home for five persons with developmental disabilities. Nelson approved the house as a group home, subject to three repairs: remove combustible wood paneling, install solid core doors, and add railings to the back door and deck.

20.    Knutelski collected bids for those repairs, secured CCI board approval, and submitted CCI's final purchase offer for the 9th Street House, which the seller accepted subject to one contingency: zoning approval by the City of Winner.

C.    The City of Winner's Zoning Regulations.

21.    The City of Winner Zoning Regulations divide the city into various districts by use: Agricultural, Residential, Recreational, Commercial, Healthcare, and Industrial.  *See* WMC § 154.065 (listing the districts in Winner).  It further

-9-

subdivides Residential districts into several specific types of residential structures and uses: Single-Family Residential (R-1), Two-Family Residential (R-2), Two-Family Residential - Manufactured Home Allowed (R-2MH), Multi-Family Residential (R-3), Multi-Family Residential - Manufactured Homes Allowed (R-3MH), and Manufactured Home Park (MHP). *Id.*

22.    Winner plots each district on an official City Zoning Map, as depicted in the map labeled Figure 7:



Figure 7

23.    Within each Residential district, the Zoning Regulations specify the uses that are permitted of right or that are conditionally permitted in that district. The 9th Street House is located in an R-1 Residential District. In that district, the City permits of right Dwellings, single-family; Schools; Churches; Parks; and

Utility facilities. WMC § 154.101. Within an R-1 Residential District, the Zoning Regulations conditionally permit a wide range of disparate uses and structures: Modular homes; Golf courses; Day cares, group family homes; Signs, bulletin board, portable, and ground and monument; and Bed and breakfast operations. WMC § 154.103.

24.    The Zoning Regulations define most but not all of the potential uses, as well as the structures designated either of right or conditionally in R-1 and other districts. For example, the Zoning Regulations defines a "DWELLING, SINGLE-FAMILY" as "[a] detached residential dwelling unit" (like the 9th Street House) "other than a manufactured or modular home, designed for and occupied by one family." WMC § 154.016. It defines "FAMILY" as "[a]ny number of individuals living together as a *single housekeeping unit*, in which not more than five individuals are unrelated by blood, marriage or adoption." *Id.* (emphasis added). It also defines Multi-family dwellings; Modular homes; Day care centers; Day cares; Day care, group family homes; Bed and breakfast operations; Hospitals; Clinics; Nursing, rest, and convalescent homes; and Golf courses, but not all uses.

25.    There is no definition for a "single housekeeping unit." See WMC § 154.016.

26.    Where a use is conditionally permitted within a district, the Zoning Regulations provide a procedure for determination of an application for a conditional use permit ("CUP"). See WMC §§ 154.491-154.493. Applicants submit a CUP application, along with a filing fee, to the City's Zoning Administrator, who either accepts or rejects the application as proper. WMC § 154.491(C). If accepted, the CUP application is referred to the City's Planning Commission as required under SDCL § 11-4-12 and established under WMC § 33.01. The Planning Commission is charged with conducting hearings on the CUP application and making a recommendation, based on a majority vote, to the City Council sitting as the Board of Adjustment. WMC § 154.492(F), (H); *see also* WMC § 154.493(B)(2) (stating that a CUP cannot be granted until "[t]he Planning Commission has reviewed the application[.]") and WMC § 154.016 (noting that the City Council "shall serve" Winner as the Board of Adjustment).

27.    Although the Planning Commission's authority is limited to recommendations only, its proceedings are significant and its recommendations are determinative. Planning Commission hearings on CUP applications are posted and notification is distributed to neighbors. WMC § 154.492(B) – (D). Any member of the public may appear before the Commission and express his or her opinion on the CUP application. WMC § 154.492(E).

-12-

28.    Once a recommendation is made to the City Council, the Council conducts a hearing in its capacity as the City's Board of Adjustments.  WMC § 154.492(H).  In Winner, the final authority for determination, by majority vote, of a CUP application is the City's Board of Adjustment.  SDCL §§ 11-4-13, -17(3); WMC §§ 154.493(A), (B)(7).  As the City Council is also the Board of Adjustment, it is ultimately the City Council that has the final authority over the determination of a CUP application.

29.    The authority and discretion of the Planning Commission or Board of Adjustment in acting on a CUP application is subject to the following criteria set forth in the Zoning Regulations:

(a)    Ingress and egress to property and proposed structures thereon with particular reference to automotive and pedestrian safety and convenience, traffic flow and control, and access in case of fire or catastrophe;

(b)    Off-street parking and loading areas where required; with particular attention to the items in division [(G)(1) for the Planning Commission and (B)(8)(a) for the Board of Adjustment] above and the economic, noise, glare, odor or other effects of the conditional use on adjoining properties and properties generally in the district;

(c)    Refuse and service areas, with particular reference to divisions [(G)(1) and (G)(2) for the Planning Commission and (B)(8)(a) and (B)(8)(b) for the Board of Adjustment] above;

(d)    Utilities, with reference to locations, availability and compatibility;

-13-

(e)     Screening and buffering with reference to type, dimensions and character;

(f)     Signs, if any, and proposed exterior lighting with reference to glare, traffic safety, economic effect and compatibility and harmony with properties in the district;

(g)     Required yards and other open spaces; and

(h)     General compatibility with adjacent properties and other property in the district.

WMC § 154.492(G) for the Planning Commission; WMC § 154.493(B)(8) for the Board of Adjustment.

### D.     The City's denial of CCI's CUP application for the 9th Street House.

30.     To complete CCI's due diligence, Knutelski needed to confirm that the City approved CCI's use of the 9th Street House as a group home for persons with developmental disabilities, a necessary step because the Zoning Regulations appeared ambiguous.

31.     CCI understood that its use of the 9th Street House would be permitted of right.  The 9th Street House, as a dwelling, single-family, is the type of structure permitted of right in its R-1 district.  WMC § 154.101.  Additionally, the proposed occupancy — five or fewer unrelated developmentally disabled residents — fits the definition of "FAMILY" under WMC § 154.016: "Any

number of individuals living together as a single housekeeping unit, in which not more than five individuals are unrelated by blood, marriage or adoption."

32.    CCI also understood that staff would visit or stay overnight on a daily basis to provide supportive services to the residents, including Little Eagle. While every other R-1 district household in Winner may at certain periods of time receive similar visits and supportive services, such as when a resident is bedridden, CCI decided that it would be best to present its use of the 9th Street House to the City, thereby avoiding any confusion or upset if there were later objections.

33.    To start, on April 14, 2025, Knutelski, on behalf of CCI, appeared before the Planning Commission and advised the Commission of CCI's plans for the 9th Street House.

34.    On April 22, 2025, Knutelski submitted a CUP application to the Zoning Administrator for use of the 9th Street House as a CCI group home.

35.    The Zoning Administrator accepted CCI's application and its $75 filing fee and referred the application to the Planning Commission for hearing and recommendation.

36.    On May 12, 2025, the Planning Commission convened a hearing on CCI's application. During that hearing, Knutelski appeared and described CCI's

-15-

plan for the 9th Street House, presenting the following two-panel handout (labeled

Figures 8 and 9) to the Commission and members of the public:

# 474 W 9th St

Goal with purchase is to expand our opportunity to integrate people with I/DD into their community by providing another permanent housing option.

Permanent housing solutions will allow CCI to continue its mission in Winner to help people with I/DD become more independent and continue to provide salaries to 55 full time staff members in Winner.

Figure 8

# • Potential Questions and Impact

- • Traffic
  - ○ Shift change occurs typically at 7pm and 7am, this will be a single staff location.
- • Home Size
  - ○ Planned home size is for 5 people-supported, with a hard limit on that number.
- • Property Upkeep
  - ○ Community Connections has historically kept very professional quality property in respect of its neighbors and for the dignity of the people we support. We are committed to continuing this approach.

Figure 9

37. There is no publicly available recording of the Commission's hearing.

38. Byron Foreman, Chairman of the Planning Commission, later appeared before the City Council, which was sitting as the Board of Adjustment, and reported on the hearing and the Commission's recommendation:

> Our part in the planning and zoning was — an application was presented [by CCI] to have a group home [the 9th Street House] put into that residential area. And that is a conditional use under R-1, which means it's allowable. So we had discussion.
>
> We had about 10 concerned citizens come to our meeting and they discussed, had a lot of questions. Keenan [Knutelski] was there. He gave a very good report on various questions they asked. They touched on parking issues, they touched on noise issues, they touched on various other things that he was able to answer, and I think he satisfied most of their concerns.

So at that point, after the discussion was done with everyone, we had a motion to approve the conditional use and forward it to the City Council for your approval. And that vote was three to two in favor of bringing the conditional use to the City Council for their approval.

39.    On May 19, 2025, the City Council, sitting as the Board of Adjustment, convened a hearing to determine the "Conditional Use permit by Community Connections Inc. on 9th Street to use building as a group home."

40.    In addition to the report by Planning Commission Chair Foreman, several persons addressed the Board:

    a.    Knutelski explained that CCI's use of the 9th Street House posed no parking or traffic issues, since residents lacked cars and at most there could be two CCI staff cars parked in the house's driveway. He assured the Board that CCI's clients were neither dangerous nor unreasonably risky due to their developmental disabilities.

    b.    Emily Fay, a CCI employee, recounted the history of the State's treatment of persons with development disabilities, from segregation in institutions to community integration, and she explained the importance of the 9th Street House in providing CCI's clients with the opportunity to live in a typical house in a typical neighborhood in Winner.

c.  Bobby Rank, a member of the public and a local judicial officer,

addressed the Board:

> I don't have a dog in this fight.  I'm just sharing my
> experience.  So we have lived next to a CCI facility for
> nine years now.  It's actually Mr. Miner's property.  And
> we have had no issues.  They're good neighbors when we
> moved in.  We have not had one issue in that time.  That's
> all I wanted to say.

d.  Cole Uecker, the Executive Director of Disability Rights South

Dakota ("DRSD"), the State's Protection and Advocacy Program

("P&A"), explained DRSD's role as the State's P&A program, the

need to provide housing that integrates persons with developmental

disabilities into their communities, and that the FHA and ADA

prohibit zoning decisions based on stereotypes or bias against persons

with developmental disabilities.

e.  Jamie Smith, a CCI employee, told the Board about her experience

living as a neighbor to a CCI group home.  While working at the local

hospital, Smith purchased a house next to the other CCI group home in

Winner:

> I didn't know that the [neighboring] house at 801 Lamer
> was a group home.  I had no idea.  Nobody told me until
> after I had been there for almost two years.  The traffic is
> minimal; the noise is minimal.  I mean, there's people
> outside shooting hoops just the same as there is in any
> other.  I have neighbors that have more vehicles than the

workers at 801 do. The going back and forth — I mean,
it's — it's not — there's been no issue whatsoever.

41.    No member of the public voiced any opposition to CCI's application until after a Council Member repeatedly solicited persons in the audience to speak against CCI's application.

42.    Only two persons, a man identified only as John and John's wife — who own a house on 9th Street (but not abutting nor adjacent to the 9th Street House) — responded to the Council Member's call, jointly addressing the Board in opposition to CCI's application.

43.    John and his wife expressed several concerns:

   a.    That traffic on 9th Street posed a risk if cars were parked along the side of the street and generated congestion in the neighborhood;

   b.    That another group home operated by CCI appeared run-down;

   c.    That use of the 9th Street House as a group home could have an adverse effect on property values; and

   d.    That the community should support CCI to "build something nicer that's going to house more than just five people."

44.    Neither John nor his wife offered any evidence to support their assertions. Additionally, neither explained how a larger dwelling housing more

developmentally disabled persons advanced the goal of integrating developmentally disabled persons into the Winner Community.

45. The last person to address the Board was Chuck Keiser, chair of CCI's board of directors. Keiser explained that the CCI board was composed entirely of volunteers. He then responded to John's statement that a CCI property appeared run-down. Keiser disputed that characterization, stating that CCI had invested significant sums in maintaining its properties, including the installation of new roofs and sprinkler systems.

46. Following Keiser's statement, the Board of Adjustment closed public comment and voted 4 to 1, with one abstention, to deny CCI's application.

### E. The basis, purpose, and effect of the City's denial of CCI's CUP application for the 9th Street House.

47. In denying CCI's application, the Board of Adjustment — comprised solely of City Council Members — knew and understood that it was denying housing opportunities to persons with developmental disabilities.

48. The purpose and effect of the Board's vote was to exclude persons with developmental disabilities from the 9th Street neighborhood.

49. When denying CCI's application, the City's Board of Adjustment made no findings, cited no evidence, and offered no explanation for its denial of housing opportunities to persons with developmental disabilities.

50.    When denying CCI's application, the City's Board of Adjustment disregarded any consideration or application of the criteria set forth in WMC § 154.493(B)(8).

51.    On information and belief, in denying CCI's application, the City's Board of Adjustment took the unprecedented step of disregarding the recommendation of the City's Planning Commission.

52.    The objections expressed by the speakers John and his wife — property values, traffic, and degraded housing quality — are code words used by persons seeking to discriminate against housing for disabled persons.

53.    In denying CCI's application, the Board of Adjustment relied on assumptions, speculation, and stereotypes about a household of disabled persons that it applied to no other household in Winner.

54.    On information and belief, Plaintiffs allege that a significant number of single-family households in Winner's R-1 districts are occupied by more than five full-time residents, that own and park more than two cars in their driveways, that have more than one or two visitors per day, and that frequently accommodate overnight guests — including some for an extended period of time.

55.    For the Board of Adjustment, the determinative factor that distinguished CCI's use of the 9th Street House from any other household in a similar dwelling in Winner was the disability status of its residents.

-22-

**F.    The aftermath of the City's denial of CCI's CUP application for the 9th Street House.**

56.    Little Eagle attended the Board's May 19th hearing and watched the vote denying him the opportunity to live in a typical Winner neighborhood in housing that met his disability-related needs.  He left the hearing feeling dejected, sad, and frustrated.

57.    Following the May 19 hearing, CCI did not receive any communication from the City regarding the bases or validity of the Board of Adjustment's denial of CCI's application.

58.    As a result of the City's action, CCI was unable to purchase the 9th Street House for use as a group home.  Little Eagle remains housed in an apartment that is incompatible with his disability-related needs.

## CAUSES OF ACTION

**Count 1: Federal Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.***

59.    Plaintiffs reallege and incorporate by reference each preceding paragraph.

60.    Defendant City of Winner is a "person" subject to the FHA under 42 U.S.C. § 3602(d).

61.    The 9th Street House is a "dwelling" under the FHA, 42 U.S.C. § 3602(b).

62.    Plaintiff Little Eagle is a person with a "handicap" under the FHA, 42 U.S.C. § 3602(h).

63.    Plaintiff CCI is a person associated with a person with a handicap under the FHA, 42 U.S.C. § 3604(f)(1)(C).

64.    Defendant City of Winner injured Plaintiffs Little Eagle and CCI by committing the following discriminatory housing practices:

    a. Denying housing opportunities or other otherwise making dwellings unavailable because of disability in violation of 42 U.S.C. § 3604(f)(1);

    b. Discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability in violation of 42 U.S.C. § 3604(f)(2);

    c. Failing or refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with disabilities equal opportunity to use and enjoy a dwelling in violation of violation of 42 U.S.C. § 3604(f)(3)(B); and

    d. Interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his

having aided or encouraged any other person in the exercise or enjoyment of, any right protected under the FHA in violation of 42 U.S.C. § 3617.

65. Plaintiffs allege that the City is liable under the disparate treatment theory for the City's discriminatory housing practices alleged herein.

66. Plaintiffs allege that the City is liable under the deliberate indifference theory for the City's discriminatory housing practices alleged herein.

67. Plaintiffs allege that the City is liable under the disparate effect theory for the City's discriminatory housing practices alleged herein.

68. Plaintiffs allege that the City is liable under the reasonable accommodation theory for the City's discriminatory housing practices alleged herein.

69. Accordingly, each Plaintiff is an "aggrieved person" under the FHA, 42 U.S.C. § 3602(i), and is entitled to relief pursuant to 42 U.S.C. § 3613(a), (c), including punitive damages based on the City's wanton and reckless disregard of each Plaintiff's federally protected fair housing rights.

**Count 2: Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.***

70. Plaintiffs reallege and incorporate by reference each preceding paragraph.

-25-

71.    Defendant City of Winner is a "public entity," subject to the ADA, 42 U.S.C. § 12131(1)(B).

72.    Plaintiff Little Eagle is a qualified individual with a disability under the ADA, 42 U.S.C. § 12131(2).

73.    Plaintiff CCI is an entity known to have a relationship or associations with disabled persons under the promulgated regulations implementing the ADA, 28 C.F.R. § 35.130(g).

74.    The City of Winner injured Plaintiffs Little Eagle and CCI by committing the following discriminatory practices in violation of the ADA, 42 U.S.C. §§ 12132, 12134(a) by:

  a. Excluding qualified individuals from participation in, or denying the benefits of the programs or activities of the City, or subjecting qualified individuals to discrimination on the basis of disability in violation of 28 C.F.R. § 35.130(a);

  b. Limiting qualified individuals with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others relating to the occupancy of a dwelling in Winner in violation of 28 C.F.R. § 35.130(b)(1)(vii);

  c. Utilizing criteria or methods of administration in the City's Zoning Regulations that have the effect of subjecting qualified individuals

-26-

with disabilities to discrimination on the basis of disability in violation of 28 C.F.R. § 35.130(b)(3)(i);

d.  Prescribing the sites and locations for Group Homes pursuant to the City's Zoning Regulations that have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination in violation of 28 C.F.R. § 35.130(b)(4)(i);

e.  Failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability absent a fundamental alteration in violation of 28 C.F.R. § 35.130(b)(7)(i);

f.  Imposing or applying eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying of access to dwellings in Winner in violation of 28 C.F.R. § 35.130(b)(8); and

g.  Excluding or otherwise denying equal services, programs, or activities to Plaintiff CCI as an entity with an association with individuals with disabilities in violation of 28 C.F.R. § 35.130(g).

75.  Plaintiffs allege that the City is liable under the disparate treatment theory for the City's discriminatory housing practices alleged herein.

-27-

76.    Plaintiffs allege that the City is liable under the deliberate indifference theory for the City's discriminatory housing practices alleged herein.

77.    Plaintiffs allege that the City is liable under the disparate effect theory for the City's discriminatory housing practices alleged herein.

78.    Plaintiffs allege that the City is liable under the reasonable accommodation theory for the City's discriminatory housing practices alleged herein.

79.    Accordingly, each Plaintiff is a "person aggrieved" under the ADA, 42 U.S.C. § 12133, and is entitled to relief pursuant to 29 U.S.C. § 794a.

### Count 3: Civil Rights Act of 1871, 42 U.S.C. § 1983

80.    Plaintiffs reallege and incorporate by reference each preceding paragraph.

81.    Defendant City of Winner is a "person" subject to the Civil Rights Act, 42 U.S.C.§ 1983, in that the City violated Plaintiffs' federal rights pursuant to the City's own policy, custom, or decision by a final policymaker.

82.    Plaintiff Little Eagle is a "citizen of the United States" under 42 U.S.C. § 1983.

83.    Plaintiff CCI is a "person within the jurisdiction" of the United States under 42 U.S.C. § 1983.

84.    The City, acting under color of any statute, ordinance, regulation, custom, or usage, subjected and injured Plaintiffs Little Eagle and CCI by:

a. Discriminating against each plaintiff because of disability in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and

b. Arbitrarily enforcing its Zoning Regulations against each plaintiff, including regulations that are void for vagueness, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

85.    Accordingly, each Plaintiff is entitled to all appropriate relief in action pursuant to 42 U.S.C. §§ 1983, 1988.

**Count 4: The Rehabilitation Act, 29 U.S.C. § 794**

86.    Plaintiffs reallege and incorporate by reference each preceding paragraph.

87.    Defendant City of Winner's City Council/Board of Adjustment is an instrumentality of a local government that receives federal funds and is subject to the Rehabilitation Act under 29 U.S.C. § 794.

88.    Plaintiff Little Eagle is a qualified individual with a disability under 29 U.S.C. § 794(a), 42 U.S.C. § 12102, and the promulgated regulations implementing the Rehabilitation Act, 45 C.F.R. § 84.4.

-29-

89.    Plaintiff CCI is an entity associated with a qualified individual, with protections under 45 C.F.R. § 84.68(g).

90.    The City of Winner's Zoning Regulations and practices are a program or activity under 29 U.S.C. § 794(a), in that it is an operation of the City as defined by 29 U.S.C. § 794(b).

91.    The City of Winner injured Plaintiffs Little Eagle and CCI under 29 U.S.C. § 794(a) by:

    a.  Excluding qualified individuals from participation in, or denying the benefits of the programs or activities of the City, or subjecting qualified individuals to discrimination on the basis of disability in violation of 45 C.F.R. § 84.68(a);

    b.  Denying qualified individuals the opportunity to participate in or benefit from the aid, benefit, or service of the City's zoning practices in violation of 45 C.F.R. § 84.68(b)(1)(i);

    c.  Limiting qualified individuals with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others relating to the occupancy of a dwelling in Winner in violation of 45 C.F.R. § 84.68(b)(1)(vii);

    d.  Utilizing criteria or methods of administration in the City's Zoning Regulations that have the effect of subjecting qualified individuals

-30-

with disabilities to discrimination on the basis of disability in violation of 45 C.F.R. § 84.68(b)(3)(i);

e.  Failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability absent a fundamental alteration in violation of 45 C.F.R. § 84.68(b)(7)(i);

f.  Imposing or applying eligibility criteria that screens out or tends to screen out an individual with a disability or any class of individuals with disability from fully and equally enjoying any program or activity in violation of 45 C.F.R. § 84.68(b)(8); and

g.  Excluding or otherwise denying equal programs or activities to Plaintiff CCI as an entity with an association with individuals with disabilities in violation of 45 C.F.R. § 84.68(g).

92.  Plaintiffs allege that the City is liable under the disparate treatment theory for the City's discriminatory housing practices alleged herein.

93.  Plaintiffs allege that the City is liable under the deliberate indifference theory for the City's discriminatory housing practices alleged herein.

94.  Plaintiffs allege that the City is liable under the disparate effect theory for the City's discriminatory housing practices alleged herein.

-31-

95.     Plaintiffs allege that the City is liable under the reasonable accommodation theory for the City's discriminatory housing practices alleged herein.

96.     Accordingly, each Plaintiff is a "person aggrieved" under 29 U.S.C. § 794a, and is entitled to relief pursuant to the same.

## REQUEST FOR RELIEF

97.     Accordingly, each Plaintiff seeks entry of a judgment:

a. That declares the relevant provisions of the Winner City Zoning Regulations invalid or void for vagueness;

b. That enjoins the City from commission of any of the unlawful or discriminatory practices alleged in this complaint and further orders the City to take affirmative action to counteract the discriminatory effect of those unlawful or discriminatory practices;

c. That awards compensatory damages to each Plaintiff, according to proof;

d. That awards punitive damages to each Plaintiff pursuant to their claims under the Fair Housing Act only, according to proof;

e. That awards attorneys' fees, costs, and expenses to each Plaintiff; and

f.   That awards any other relief to which any Plaintiff may be entitled.


Dated this 4th day of May, 2026.

Respectfully submitted,

DISABILITY RIGHTS SOUTH
DAKOTA


*Elana J. Hicks*

Elana J. Hicks
Cole Uecker
1604 Mt. View Rd.
Ste. 1
Rapid City, SD 57702
Tel: (605) 224-8294
elana.hicks@drsdlaw.org
cole.uecker@drsdlaw.org
*Attorneys for Plaintiff Roger Little Eagle*


JOHNSON, POCHOP & BARTLING LAW
OFFICE, LLP


Stephanie E. Pochop
405 Main St.
Gregory, SD 57533
Tel: (605) 835-8391
stephanie@rosebudlawyers.com
*Attorneys for Plaintiff Community
Connections, Inc.*


-33-